IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                                              PLAINTIFF

v.                                    Case No. 5:13-CR-50096

ALAN W. BERGER                                                        DEFENDANT

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Magistrate Judge Erin L. Setser's report and recommendations (Doc. 24) regarding Defendant Alan W. Berger's motion to suppress (Doc. 14). Judge Setser recommends that the Court deny Defendant's motion. Defendant has filed objections (Doc. 25) to the report and recommendations, and pursuant to 28 U.S.C. 636(b)(1)(C), the Court has conducted a *de novo* review of the report, the parties' briefs (Docs. 14, 16, 20), and the relevant evidence. After due consideration, the Court finds the Magistrate's reasoning to be sound and further finds that Defendant's objections offer neither law nor fact requiring departure from the Magistrate's findings.

I.    **Discussion**

A.    **First Objection: standard of review used in evaluating warrantless probationary search and seizure of external hard drive and other media storage devices**

Mr. Berger's first objection to the report and recommendations concerns the Magistrate's conclusion that he "had a diminished expectation of privacy in the hard drive and other seized items and the Government had a legitimate interest in ensuring Defendant's compliance with the conditions of his supervised release, such that probation officers needed no more than reasonable suspicion to conduct a forensic search of the hard drive and other seized items." (Doc. 25, p. 3).

The Court agrees with the Magistrate's determination that Mr. Berger had a diminished

expectation of privacy in his home and belongings by virtue of being on supervised release and subject to unscheduled visitations by the U.S. Probation Office. The obvious purpose of these unscheduled probation visits was to verify Mr. Berger's compliance with the conditions of his supervised release. At the time of the search and seizure of the media storage devices that are the focus of the motion to suppress, Mr. Berger was a convicted sex offender who had already served 60 months imprisonment for using a means of interstate commerce to persuade a minor to have sex and was on a 10-year term of supervised release. (Doc. 14-1, p. 1). On June 8, 2012, three probation officers arrived at Mr. Berger's residence to conduct an unannounced home visit after receiving a tip from local law enforcement that Mr. Berger had been accessing the internet through a Facebook account in violation of the special conditions of his supervised release. These special conditions prohibited Mr. Berger from "subscrib[ing] to any computer online services [or] . . . access[ing] any Internet services . . . unless approved in advance in writing by the United States Probation Officer" or from "possess[ing] Internet capable software on any hard drive, disk, floppy disk, compact disk, DVD, diskette, magnetic tape, or any other electronic storage media, unless specifically approved in advance writing by the United States Probation Officer." *Id.* at p. 5.

Although the special conditions of Mr. Berger's supervised release prohibited him from using the internet without the prior approval of the Probation Office, living or working with or near children, having any contact with minors under the age of 18, or viewing or possessing child pornography, these conditions did not explicitly require Mr. Berger to submit to a warrantless probation search of his home, person, or effects at any time, for any reason. Instead, his standard conditions only required that he "permit a probation officer to visit him . . . at any time at home or elsewhere and . . . permit confiscation of any contraband observed in plain view of the probation

officer." *Id.* at p. 3. It is the absence of any explicit search condition, Mr. Berger argues, that rendered the probation officers' warrantless search and seizure of Mr. Berger's personal property unconstitutional.

Setting aside for the time being the issue of whether Mr. Berger gave his voluntary consent to search the items that were seized from his home, it is clear that at the time of the search, Mr. Berger did not enjoy the same expectations of privacy as a citizen who was not on supervised release. The Supreme Court held in *United States v. Knights* that those serving terms of probation or supervised release, by virtue of their status alone, "'do not enjoy the absolute liberty to which every citizen is entitled.'" 534 U.S. 112, 119 (2001) (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987). Because of this, when a court is asked to evaluate the constitutionality of a warrantless search of a probationer, the analysis is not always straightforward. A court must balance "on the one hand, the degree to which [a search] intrudes upon an individual's privacy and, on the other, the degree to which it is needed to promote legitimate government interests." *Id.* at 113. Since "[t]he touchstone of the Fourth Amendment is reasonableness," *id.* at 112, this balancing test must consider whether "an intrusion on the probationer's significantly diminished privacy interests is reasonable," *id.* at 121.

Mr. Berger appears to argue in his objections to the Magistrate's report and recommendations that *unless* a defendant on supervised release is subject to a search condition, he will otherwise "maintain the Fourth Amendment right to not have [his] home[], person[], or propert[y] searched without a warrant . . ." regardless of the reasonableness of the search or the defendant's expectation of privacy. *See* Doc. 25, p. 7. This, however, is not the law. The *Knights* court considered the probationer's search condition to be a "salient circumstance" in the overall analysis of

reasonableness, but did not find the presence of the search condition alone to be determinative of the reasonableness of the warrantless search. *Knights*, 534 U.S. at 112. The court instead considered and balanced "all the circumstances of a search," including the probationer's diminished expectation of privacy, the fact that the probationer was "unambiguously informed of the search condition" at the time of sentencing, and the government's interest in protecting potential victims from those who would violate the criminal laws. *Id.* at 113. Considering these competing factors, the *Knights* court determined that, "[o]n balance, no more than reasonable suspicion was required to search this probationer's house." *Id.*

Turning to the Magistrate's analysis of the reasonableness of the search of Mr. Berger's home and property, the Court finds that Judge Setser properly and thoroughly conducted a Fourth Amendment balancing test, as described in *Knights*. In doing so, she considered the totality of the circumstances surrounding the search, including (1) Mr. Berger's status as a convicted sex offender; (2) his diminished expectation of privacy on supervised release; (3) his knowledge of the conditions the sentencing court placed on his ten-year term of supervision—to include the restriction that Mr. Berger was not to have any internet capable devices and was subject to periodic, unannounced home visits by his probation officer—; (4) his admission to probation officers during the unannounced home visit that he had been violating the terms of his supervised release for the past several years by accessing the internet; (5) his agreement to sign a "Consent to Search" form; and (6) his probation officers' observation of several internet-capable devices and electronic storage devices that could possess internet-capable software, all in plain view in Mr. Berger's home.

The Magistrate also appropriately drew guidance from the Eleventh Circuit's decision in *United States v. Yuknavich*, 419 F.3d 1302, 1310 (11th Cir. 2005), a case in which the appellate court

analyzed the reasonableness of a warrantless search of a probationer's home and possessions when the probationer was not subject to a search condition. The court determined that, considering the totality of the circumstances, a warrantless search of Mr. Yuknavich's property was lawful since the probation officers had "reasonable suspicion" to justify a search. The "reasonable suspicion" standard was also relied upon in *Knights*, even though in that case, the defendant was subject to a search condition. In distinguishing the facts in *Yuknavich* from those in *Knights*, the Eleventh Circuit reasoned that the lack of a search condition did not upset the *Knights* balancing test so as to require more than reasonable suspicion to search Mr. Yuknavich's property. *Id.* at 1310. Reasonable suspicion was satisfied in Mr. Yuknavich's case despite the fact that he may have had more of an expectation of privacy than a probationer with an explicit search condition. *Id.* at 1311.

Though the particular question presented in the instant motion to suppress has not directly been addressed by the Eighth Circuit, the discussion in *United States v. Brown*, 346 F.3d 808 (8th Cir. 2003), which was decided after the Supreme Court's ruling in *Knights*, indicates that the Eighth Circuit would likely agree with the Eleventh Circuit that the presence or absence of a search condition is but one factor to consider in the overall Fourth Amendment balancing test. In *Brown*, the Eighth Circuit was faced with evaluating the constitutionality of a warrantless search of the home of a probationer who was subject to a search condition, just as in *Knights*. However, unlike *Knights*, the search condition at issue in *Brown* authorized warrantless searches by probation officers only. The search of Mr. Brown's apartment was conducted with the assistance of members of the drug task force, none of whom were probation officers. *Id.* at 812. Rather than throw out the "reasonable suspicion" standard altogether, the *Brown* court simply "balance[d] any additional privacy intrusion resulting from the presence of the additional [non-probation] personnel against the legitimate

interests advanced by their presence" and found that "the *Knights* balance does not change and the government can prevail if [the probation officer] had a reasonable suspicion that Brown was violating the terms of his probation." *Id.*

In light of the above analysis, Mr. Berger's first objection to the report and recommendations is overruled, as the Magistrate's reasoning and reliance on both fact and law were correct. The probation officers inspecting Mr. Berger's home had, on balance, reasonable suspicion to conduct a warrantless search and seizure of the computer-related items they found there. The balancing test conducted by the Magistrate, considering all relevant circumstances, was therefore sound and comported with Supreme Court precedent.

### B.    Second Objection: scope of Defendant's consent to search seized items

Mr. Berger's second objection pertains to the Magistrate's finding that he voluntarily consented to a search of the Seagate external hard drive and other digital storage devices that were seized from his home. Mr. Berger contends that although he voluntarily gave his consent for probation officers to search his home and seize the contents therein, he did not contemplate the seizure of the external hard drive, nor did he contemplate that a forensic examination of the hard drive would be performed for evidence of contraband or other violations of the terms of Mr. Berger's supervised release. The external hard drive and other media storage devices were not directly connected to the internet, unlike Mr. Berger's computer and Xbox. It appears that Mr. Berger may concede that the scope of his consent to search included these internet-capable devices, as well as his cell phone. *Cf.* Doc. 25, pp. 9-10 ("The fact [that] Mr. Berger, in response to the probation officer's inquiry, handed over only a mobile cellular device shows that it was his understanding the probation officer was only interested in devices that had the ability to connect directly with the

internet, i.e., the computer with the wifi device, the Xbox, and his cellphone.").

As the Magistrate pointed out in her report and recommendations, Mr. Berger understood prior to giving his consent that the purpose of the search had to do with his unlawful internet usage, which violated a special condition of his supervised release. Prior to him giving consent to search, the probation officers had observed in plain view Mr. Berger's computer, which was connected to the internet, and his internet-capable Xbox. In addition, Mr. Berger volunteered to the officers that he had used the internet to order the hot tub that was in his back yard and that he had been accessing the internet over at least the past year, if not longer, in blatant violation of the terms of his supervised release.

Mr. Berger was informed prior to signing the consent form that he was not required to give consent and that any evidence found as a result of the search of his premises could be seized and used against him. Mr. Berger never objected to the search and seizure of his property while probation officers were at his home, even when he was presented with a list of items that were being confiscated and informed that any revocation proceedings filed against him would take place after the confiscated devices could be forensically examined.

Although "[t]he scope of a search is generally defined by its expressed object," *Florida v. Jimeno*, 500 U.S. 248, 251 (1991), here, it appears Mr. Berger does not agree that the expressed object of the search was to find evidence of his having violated the terms of his supervised release. Considering his exchanges with the probation officers in his home both before and after signing the "Consent to Search" form, it is unclear to the Court how a person in Mr. Berger's position, with his knowledge and understanding of his prior crimes and the conditions of his supervised release, could have misunderstood that the internet-capable devices, as well as other media potentially containing

internet-capable software, would not only be seized but forensically searched for contraband or other evidence of violations of the terms of supervised release. Indeed, the Magistrate pointed out in her report and recommendations that before Mr. Berger was asked to consent to the search, the probation officers heard him confess to having violated the terms of his supervised release repeatedly. The officers also observed in plain view certain devices in Mr. Berger's home that appeared to be connected to the internet. The officers could have reasonably suspected that any electronic storage media in Mr. Berger's home contained internet-capable software and had been used to connect to the internet, in direct violation of the terms of Mr. Berger's supervised release.

The Supreme Court has stated that "[t]he standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.* In the case at bar, it was reasonable for probation officers to have understood that Mr. Berger consented to both the search and seizure of the items that were removed from his home. This is particularly true in light of the fact that Mr. Berger had multiple opportunities to object or withdraw his consent, but never did. The Magistrate's analysis of the facts supporting her conclusion that Mr. Berger consented to the search of the external hard drive is well supported and does not require further elaboration by the Court. Accordingly, Mr. Berger's second objection is overruled.

## II. Conclusion

Having conducted a *de novo* review of the report and recommendations issued by the Magistrate, and having considered and overruled Defendant's objections, the report and recommendations (Doc. 24) are hereby **ADOPTED** in their entirety.

**IT IS THEREFORE ORDERED** that Defendant Alan W. Berger's motion to suppress

(Doc. 14) is **DENIED**.

This case is scheduled for a jury trial to commence the week of January 21, 2014.

**IT IS SO ORDERED** this 16th day of January, 2014.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE